IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>MARRYON HOPSON SAVAGE,<br><br>*Defendant*. | Criminal No. 2:25-cr-175-1<br><br>Hon. William S. Stickman IV |

## **MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

Defendant Marryon Hopson Savage ("Savage") filed Defendant's Motion to Suppress Evidence seeking to suppress evidence recovered on January 15, 2025, during the execution of a search warrant at his residence. (ECF No. 31). He argues that the search warrant affidavit failed to state probable cause, that the trash pulls mentioned in the affidavit were unlawfully conducted and stale, and that the seizure of firearms from his residence exceeded the scope of the search warrant. (*Id.*). The Government counters that the motion is meritless and should be denied. (ECF No. 34). For the following reasons, the motion will be denied.

### I.    STANDARD OF REVIEW

When faced with a challenge to a magistrate judge's probable cause determination, the Court's role is limited. It may not conduct a *de novo* review. Rather, it simply ensures that the issuing magistrate judge had a substantial basis for concluding that probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983); *United States v. Kepner*, 843 F.2d 755, 762 (3d Cir. 1988). The Court should "[pay] great deference" to the magistrate judge's decision. *Gates*, 462 U.S. at 236. The case law makes clear that the Court's review is confined to the "four

1

corners" of the affidavit that were before the magistrate judge. *United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993). "'The supporting affidavit must be read in its entirety and in a commonsense and nontechnical manner.'" *Id.* (quoting *United States v. Conley*, 4 F.3d 1200, 1206 (3d Cir. 1993)). "[S]tatements in an affidavit may not be read in isolation—the affidavit must be read as a whole." *Id.* at 1208 (quoting *United States v. Brown*, 3 F.3d 673, 678 n. 5 (3d Cir. 1993)). This standard of review "does not mean that reviewing courts should simply rubber stamp [the issuing magistrate judge's] conclusions." *United States v. Tehfe*, 722 F.2d 1114, 1117 (3d Cir. 1983). It means that "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States v. Ventresca*, 380 U.S. 102, 109 (1965).

## II.    ANALYSIS

### A. Affidavit of Probable Cause

The Court holds that the affidavit of probable cause provided the state magisterial district judge with a substantial basis to find probable cause existed to issue the search warrant for Savage's residence and curtilage located at 316 S. Crescent Drive (Door B).[1] The affidavit recites the reasons that the affiant suspected that Savage was distributing and possessing marijuana and using his residence to further his criminal activities.[2] (ECF No. 34-1). Those

---

[1] "Probable cause exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Grubbs*, 547 U.S. 90, 95 (2006) (quoting *Gates*, 462 U.S. at 238). Probable cause "is not a high bar. It requires only the kind of fair probability on which reasonable and prudent [people,] not legal technicians, act." *Kaley v. United States*, 571 U.S. 320, 338 (2014) (alteration in original) (internal quotations omitted) (quoting *Florida v. Harris*, 568 U.S. 237, 244 (2013)). Further, "a finding of 'probable cause' may rest upon evidence [that] is not legally competent in a criminal trial." *Ventresca*, 380 U.S. at 107.

[2] The address searched was determined to be Savage's residence. It was the address listed on his driver's license and vehicle registration. During surveillance of Savage, officers observed

reasons include the affiant's extensive training and experience with drug trafficking and drug traffickers, and Savage's criminal history as a drug trafficker as evinced by his 2019 conviction for manufacture of controlled substance. (*Id.* at 1-6). The affidavit also notes that Savage was convicted of possession of marijuana three separate times in 2024. (*Id.* at 6). The affidavit further recounts the traffic stops of Savage in March 2024 and December 2024, when he was found to be in possession of both marijuana and large amounts of United States currency. The affidavit explains that law enforcement officials conducted physical surveillance of Savage. (*Id.* at 6-7). It details how officers conducted three trash pulls from garbage cans Savage placed at the end of his driveway against the road for garbage pickup[3] – (1) a June 10, 2024, trash pull resulting in the recovery of plastic baggies containing marijuana, (2) a November 18, 2024, trash pull resulting in the recovery of marijuana residue and marijuana packaging-related items; and (3) within 48 hours of the search warrant application in January 2025, a trash pull resulting in the recovery of marijuana and marijuana-packaging items.[4] (*Id.* at 6-8).

---

Savage park his vehicle in the driveway. Furthermore, during a December 2024 traffic stop, Savage confirmed that the search location was his residence. (ECF No. 34-1, pp. 6-7).

[3] On trash pick-up day, Officer Zachry Barrett of the Hermitage Police Department pulled trash bags from a trash can that was placed at the very end of the driveway where it meets the street.

[4] The Court holds that the information regarding the first two trash pulls was not stale at the time of the warrant application. It recognizes that the "[a]ge of the information supporting a warrant application is a factor in determining probable cause." *United States v. Harvey*, 2 F.3d 1318, 1322 (3d Cir. 1993). "If too old, the information is stale, and probable cause may no longer exist." *Id.* However, age alone does not determine whether information is stale. *Id.* "The likelihood that the evidence sought is still in place depends on a number of variables, such as the nature of the crime, of the criminal, of the thing to be seized, and of the place to be searched." *United States v. Tehfe*, 722 F.2d 1114, 1119 (3d Cir. 1983). Importantly, the passage of time loses significance when the evidence sought relates to protracted or ongoing criminality." *United States v. Henley*, 941 F.3d 646, 653 (3d Cir. 2019). Furthermore, stale information "can be refreshed with newer information that relates back to the subject of the older information." *United States v. Cintron*, 243 F. App'x 676, 679 (3d Cir. 2007) (citing *Tehfe*, 772 F.2d at 1120). In this case, the age of the first two trash pulls – i.e., six months and two months prior to the

In totality, the Court holds that the information presented was more than sufficient for the magisterial district judge to make a common-sense decision that there was a fair probability that contraband or evidence of drug trafficking crimes would be found at Savage's residence. The trash pulls and the traffic stops of Savage indicated a pattern of ongoing and continuous drug possession and trafficking. When combined with other facts – i.e., Savage's prior convictions and police surveillance - it provided the magisterial district judge with a substantial basis for concluding that probable cause existed. *See United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002) ("[D]irect evidence linking the residence to criminal activity is not required to establish probable cause.... Instead, probable cause to search can be based on an accumulation of circumstantial evidence that together indicates a fair probability of the presence of contraband at the home of the arrested.").

The Court rejects Savage's argument that the trash pulls were unlawfully conducted because the end of the driveway was the curtilage of his residence.[5] As the Government accurately notes:

---

application – is not important as the affidavit avers facts indicating a pattern of ongoing and continuous drug trafficking. *See United States v. Urban*, 404 F.3d 754, 774-75 (3d Cir. 2005); *see also Henley*, 941 F.3d at 653. Significantly, the officers refreshed the information derived from the first two trash pulls with the December 2024 traffic stop and the trash pull 48 hours before the warrant application. Furthermore, "[w]hile one search turning up marijuana in the trash might be a fluke, two indicate a trend." *United States v. Leonard*, 884 F.3d 730, 734 (7th Cir. 2018). As such, the drug-related evidence obtained from the three trash pulls that occurred in this case is indicative of ongoing criminal activity making the passage of time less significant. *See Henley*, 941 F.3d at 653; *see also Cintron*, 243 F. App'x at 679 ("[A]n activity such as drug trafficking is of a continuous and protracted nature and consequently the passage of time diminishes the significance of staleness in such cases.").

[5] "[T]he extent of the curtilage is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself." *United States v. Dunn*, 480 U.S. 294, 307 (1987) (citing *Oliver v. United States*, 466 U.S. 170, 180 (1984)). There are four factors relevant to the curtilage inquiry: "[1] the proximity of the area claimed to be curtilage to the home, [2] whether the area is included within an enclosure surrounding the home, [3] the nature of the uses to which the area is put, and [4] the steps taken

4

> A resident of a property has no reasonable expectation of privacy in the content of a trash can after it is placed near a street for pick-up on trash day. *United States v. McGhee*, 98 F.4th 816, 822 (7th Cir. 2024) (citing *California v. Greenwood*, 486 U.S. 35, 40-41 (1988)). The Fourth Amendment analysis is more complicated if the trash can was within the curtilage of a residence when the trash pull occurred. *McGhee*, 98 F.4th at 822. The analysis is not complicated if the trash can was not within the curtilage of a residence because "the shield of the Fourth Amendment ends at the boundary of a home's curtilage." *Id.* (citing *Florida v. Jardines*, 569 U.S. 1, 5–6 (2013)).

(ECF No. 34, p. 7). Here, on balance, and incorporating the Court's prior analysis in *United States v. Moses*, Criminal No. 21-cr-160-1, 2023 WL 3408573 (W.D. Pa. May 12, 2023), *aff'd* 142 F.4th 126 (3d Cir. 2025) as to whether a driveway constitutes curtilage, the Court holds that the portion of the driveway at issue was not intimately linked to the home and, therefore, not curtilage. Savage does not dispute the Government's representation that the duplex is approximately 50 feet from the street or that there is no fence or fence-like shrubbery enclosing the driveway or otherwise separating it from the street, neighboring properties, or the duplex itself. (ECF No. 34, p. 7). The trash cans were placed at the end of the driveway next to the street. Consequently, the Court holds that the officer did not enter the home's curtilage; he did not physically intrude into a constitutionally protected area when he conducted the three trash pulls. It was appropriate for information about the three trash pulls to be included in the affidavit, and given the weight it was due in a probable cause analysis by the magisterial district judge.

**B. Good Faith Exception**

Even assuming that a substantial basis did not exist for the probable cause determination, the Court holds that the evidence obtained would nevertheless be admissible under the good faith

---

by the resident to protect the area from observation by people passing by." *Id.* at 301. The "central component of the inquiry [i]s whether the area harbors intimate activity associated with the sanctity of a man's home and the privacies of life." *Id.* (citation omitted).

exception to the exclusionary rule established in *United States v. Leon*, 468 U.S. 897 (1984). Under the good faith exception, suppression of evidence is "inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority." *United States v. Williams*, 3 F.3d 69, 74 (3d Cir. 1993). The relevant inquiry in determining good-faith reliance is "whether a reasonably well-trained officer would have known that the search was illegal despite the . . . judge's authorization." *United States v. Hodge*, 246 F.3d 301, 307 (3d Cir. 2001) (internal citations omitted). In most cases, the good-faith showing is not a difficult one for the Government to make: "The mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception." *Id.* at 307–08.

The United States Court of Appeals for the Third Circuit has recognized that the good faith exception does not apply in four limited circumstances:

> 1) when the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit;
> 2) when the magistrate judge abandoned his or her judicial role and failed to perform his or her neutral and detached function;
> 3) when the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or
> 4) when the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

*Id.* at 308 (citation omitted). These limited exceptions involve conduct that is "deliberate, reckless, or grossly negligent." *Herring v. United States*, 555 U.S. 135, 144 (2009).

Savage does not claim that any of the four limited circumstances apply. (ECF No. 31). Any attempt to do so would be unavailing because there is nothing in the record to suggest that the magisterial district judge issued the warrant in reliance on a deliberately or recklessly false affidavit, or that the magisterial district judge abandoned her judicial role and failed to act in a neutral and detached manner. Similarly, any claim that the warrant was so facially deficient that

it failed to particularize the place to be searched or the things to be seized is unsupported by the record. Finally, as discussed above, the affidavit set forth sufficient indicia of probable cause and it was not facially deficient as to such matters. Thus, it was entirely reasonable for investigating officers to rely on the warrant. The Court is satisfied that the law enforcement officers acted with a reasonable, good-faith belief that they were operating lawfully pursuant to a valid search warrant. The Court holds that the good faith exception would apply even if the warrant was deemed insufficient.

### C. Seizure of Firearms in Plain View

During the execution of the search warrant, three loaded pistols – one Mini Draco and two Glock pistols – were located in Savage's master bedroom. One Glock 26 pistol with a loaded high-capacity magazine was found on the bed. One loaded Glock 27 pistol and one Mini Draco pistol with a loaded high-capacity magazine were found in an easily accessible position in a closet of the master bedroom, along with several bags of marijuana. Savage does not dispute where these items were located in his residence, but instead takes issue with the seizure of the firearms because the items being search for were identified as "Marijuana, any material utilized to package or store marijuana, items utilized to analyze or ingest marijuana, and indicia or ownership of the residence." (ECF No. 34-1, p. 1).

Under the plain view doctrine, officers may lawfully seize items not described in a search warrant. *Arizona v. Hicks*, 480 U.S. 321, 326 ("'[i]t is well established that under certain circumstances the police may seize evidence in plain view without a warrant.'"). To seize an item under plain view (1) "the officer [must] not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed[,]" (2) the object's "incriminating character must also be immediately apparent[,]" and (3) the officer "must also have a lawful right

of access to the object itself." *Horton v. California*, 496 U.S. 128, 136-37 (1990) (internal quotation marks and citations omitted).

Here, the first factor is easily satisfied as the warrant permitted officers to enter the residence, at which time they observed the firearms. Second, despite Savage's argument to the contrary, the firearms bore an immediately apparent incriminating character. As noted in the search warrant affidavit, Savage was previously convicted of a felony thus rendering him a person prohibited from possessing a firearm. *See United States v. Zareck,* Criminal No. 09-168, 2021 WL 4391393, at *63 (W.D. Pa. Sept. 24, 2021) (stating that state police officers conducting a search knew the defendant was a felon and therefore, was prohibited from possessing ammunition under federal law, thus making the incriminating nature of the ammunition immediately apparent); *see also United States v. Le*, 173 F.3d 1258, 1270 (10th Cir. 1999) (explaining that when a police officer of the Tulsa Police Department knew the defendant was a felon and that it was a federal offense for a felon to possess a firearm, the police officer lawfully seized "guns and ammunition ... discovered pursuant to a valid warrant-based search for methamphetamine, and were in the plain view of the searching officers"); *United States v. Wells*, 98 F.3d 808, 810 (4th Cir. 1996) (explaining that because agents involved in the lawful search of the premises knew the defendant was a convicted felon, the agents could lawfully seize a firearm that was in plain view). It was clear through the investigation proceeding the warrant, and the marijuana drug …. found in the residence, that Savage was engaging in drug trafficking.[6] Third,

---

[6] The Court concurs with the Government that:

> It has been the law of this circuit since at least 1985, when the Third Circuit issued its opinion in *United States v. Adams*, 759 F.2d 1099, 1108 (3d Cir. 1985), that "[w]eapons may be as much 'tools of the trade' as the most commonly recognized narcotics paraphernalia." This principle has been repeated and relied upon in this circuit many times since then. *See, e.g., United States v. Russell*, 134 F.3d 171, 183 (3d Cir. 1998) ("[I]t has long been recognized that firearms are

the officers could lawfully access the firearms in all places in the residence, given that the warrant listed items that could be found anywhere in the house.  Thus, the plain view exception permitted the seizure of the three firearms.

### III.    CONCLUSION

For these reasons, Savage's motion will be denied by Order of Court to follow.

BY THE COURT:

_____

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

7-10-26
_____
Dated

---

relevant evidence in the prosecution of drug-related offenses, because guns are tools of the drug trade."); *United States v. Brown*, 2023 WL 3300498, at *[n]6 (W.D. Pa. 2023) (Ranjan, J.) ("When law enforcement officers stumble across hidden guns during a lawful search for drugs, they are allowed to draw the reasonable inference that the guns may be related to drug trafficking occurring at the location.") (quoting *United States v. Prather*, 279 F. App'x 761, 766 (11th Cir. 2008)).
(ECF No. 34, p. 23).